

February 16, 2010

**BY E-FILING AND HAND DELIVERY**

Magistrate Judge Joseph C. Spero
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

Re:   *Bare Escentuals Beauty, Inc. v. Intelligent Beauty, LLC*
      Case No. CV-09-00382 (CRB)(JCS)

Dear Judge Spero:

The parties hereby submit the following joint letter with respect to Plaintiff's responses to discovery requests by Defendant and following a telephonic conference on February 1, 2010 and an in-person meet and confers on February 7, 2010 and February 12, 2010.

**1. Internal communications and consumer complaints about products and services under the bareMinerals mark. (Req. Nos. 142, 143, 129, 136, 137, 56 -60 & 38)[1]**

    **Defendant's Position:** Defendant alleges that Plaintiff's offers including its "risk free" trial offer for an introductory kit and enrollment in the bareMinerals continuity program are false and misleading and has asserted the affirmative defense of unclean hands and a counterclaim for false advertising and unfair competition. Defendant has repeatedly requested customer complaints about Plaintiff's offers but Plaintiff has refused to comply.

    On January 22, 2010 a few days before the deposition of the designated corporate witness on the subject of customer complaints, Defendant received e-mails from Plaintiff's customer service group, selected for relevance to product ingredient and efficacy issues. These documents also revealed customer complaints about Plaintiff's "risk free" trial offer and complaints that Plaintiff's other introductory offers are false and misleading. Plaintiff's ads compare the price of its Get Started Kits and BE Club continuity program with retail prices and claim that customers get substantial savings by purchasing these products. The ads do not disclose that the amount of product provided is only a fraction of that offered at retail and, therefore, the price of the Kits and continuity shipments far exceed the cost of similar quantities of Plaintiff's products at retail.[2]

    Defendant needs the customer complaints about Plaintiff's "risk free" trial offer, the retail "value" claims about its bareMinerals "Get Started Kits," the size and amount of product contained in the "Get Started Kits," the "discount off retail" claims for its bareMinerals continuity club, enrollment in the club without consent or knowledge, and the size and amount of product contained in the

---

[1] The discovery requests and Plaintiff's responses are listed in Exhibit "A" to the Declaration of Marcy J. Bergman. Request Nos. 60 and 38 have been raised to the Court previously and, at the Court's request, the parties agreed on initial search terms on December 16th. With respect to these requests, the promised production does not include a search of Plaintiff's Slingshot customer service database, records from its customer call center or other documents stored electronically or in file cabinets. Additional search terms have become relevant based on information not previously disclosed by Plaintiff.

[2] Two sample complaints of this nature are attached as Exhibit "B" to the Bergman Decl.

Magistrate Judge Joseph C. Spero
February 16, 2010
Page 2                                                                                                                          Bryan Cave LLP

bareMinerals club regular shipments. These documents, along with the scripts for customer service representatives with respect to the marketing and sale of the "Get Started Kits", the "Risk Free Trial Offer" and its continuity program, all directly support Defendant's unclean hands defense and counterclaim.[3]

**Bare Escentuals' ("BE's") Position**: On February 2, 2010, *after the close of fact discovery*, Defendant Intelligent Beauty, LLC ("IB") served a counterclaim (Dkt. No. 65), alleging that BE engaged in false advertising with respect to value claims made in connection with certain of its product packages. IB's counterclaim, filed nearly a year after it answered the original complaint in this action, is both untimely and fails to state any actionable claim, and BE will file a motion to dismiss both the counterclaim and IB's unclean hands defense by this Friday, February 19. This section of IB's motion to compel is nothing more than a belated attempt to broaden the scope of past discovery and agreements reached with BE in an effort to obtain discovery for its counterclaim.

As IB concedes in footnote one, the parties previously negotiated and agreed upon the scope of discovery related to consumer complaints during a day long meeting ordered by this Court to resolve earlier discovery disputes, which the parties memorialized.[4] The parties agreed that BE would search for consumer communications responsive to a long list of search terms proposed by IB,[5] and— at enormous expense—BE reviewed and produced nearly 80,000 pages of such documents, more than triple the size of IB's *entire document production to date*. IB's effort to disregard its earlier courthouse agreement in order to obtain discovery for a tardy counterclaim should be denied. While IB also asserts in footnote one that BE's expansive production did not include a search of its "Slingshot customer service database, records from its customer call center, or other documents stored electronically or in file cabinets," this assertion misrepresents the facts. As BE's Senior Director of Operations Thompson testified, [redacted] BE searched for customer communications/complaints in electronic files that contained all email communications to and from customers. As Thompson also testified [redacted]. Contrary to IB's assertion, BE also reviewed other documents stored electronically or in physical files for responsiveness.

In an effort to shoehorn its current demand into other past document requests, IB also identifies several requests in this section as calling for "consumer complaints" related to its new counterclaim, which quite clearly do not, and several of which were served nearly a year before IB even filed its counterclaim. *See*, *e.g.*, IB's RFPs No. 38 (analysis of marketing), 56, 59 (calling for complaints about *IB's* and its affiliates marketing, not BE's), 58 (documents about recalls), 129 (communications with BE's partner Sephora),142 (product pricing), 143 (business/marketing plans). Regarding IB's RFP 57, BE agreed to produce responsive documents identified to search terms agreed by counsel.

---

[3] Request No. 142 asked for documents referring to the pricing of products sold under the bareMinerals mark. Such documents include the customer representative scripts explaining the offers for bareMinerals "Get Started Kits" and bareMinerals club, and documents reflecting substantiation for Plaintiff's "retail value" claims. Plaintiff has produced only a retail price list. The counterclaim is attached to the Bergman Decl., Ex. "C."

[4] Accompanying Declaration of K. Joon Oh, ¶ 2, Ex. A at IB Nos. 1, 4

[5] The search terms were: butylene, cyclomethicone, propylene glycol, D&C, FD&C, talc*, *paraben*, Cakey, heavy, breakout, "break out", acne, clog*, irritat*, coverage NOT ("Maximum Coverage Concealer Brush" or "Maximum Coverage Brush" or "Full Coverage Kabuki Brush"), rash, dry NOT "Wet/Dry Shadow Brush", flaky, goopy, sensitive w/5 (ingredient or chemical), harmful w/5 chemical. Oh Dec., ¶ 3.

16940.1

Magistrate Judge Joseph C. Spero
February 16, 2010
Page 3                                                                                                    Bryan Cave LLP

2.  **Documents regarding customer confusion between bareMinerals and RAWMINERALS. (Req. Nos. 146-159)**

    **Defendant's Position:** Plaintiff relies on instances in which customers have mixed up the names bareMinerals and RAWMINERALS in emails to both companies as evidence that the similarity between the trademarks bareMinerals and RAWMINERALS is likely to cause confusion between the brands. Defendant argues that the reason for any possible confusion is the highly descriptive name chosen by bareMinerals, using the generic name of the product ingredient (minerals) as the largest component of the mark. Defendant believes that customers mix up the names of many brands of mineral makeup. Defendant needs customer communications that mention other mineral makeup brands including Bare Naturale, Sheer Cover, Glo Minerals, etc. because they strongly relate to and explain other documents produced by Plaintiff that mention RAWMINERALS.

    **BE's Position**: These demand all customer communications referencing fourteen separate brands of mineral make-up, including Bare Naturale. The Court previously denied IB's motion to compel documents concerning Bare Naturale. Dkt. No. 63. That mark is irrelevant to this lawsuit, which involves IB's use of the mark RAWMINERALS.

    Nonetheless, IB again asks the Court to compel discovery regarding that mark and a host of similarly irrelevant names, several of which do not even include the term "minerals," including Sheer Cover; Jane Iredale; Color Science; Smooth Minerals; Barely There; Signature Minerals; Bare Images; Beautifully Baremineral; Purminerals; Glominerals; Everyday Minerals; Naked Minerals; and Emani Minerals. IB's RFP Nos. 146-159. IB implies its requests are relevant to whether bareMinerals or rareMinerals marks are "descriptive" and "generic" fails. The strength and distinctiveness of a mark under the applicable *Sleekcraft* standard is determined on a "spectrum of marks" scale assessing Bare Escentuals' marks—not competitors' marks. Oh Dec., ¶ 5, Ex. C (NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS: CIVIL, §15.17 (2007)).
    Moreover, IB's sole argument, that such documents would support its assertion that the abundant confusion between its RAWMinerals mark and BE's bareMinerals and rareMinerals marks have to do with the term "minerals" completely fails with respect to communications about brands that do not even contain that term. In any event, whether other brands infringe is irrelevant to whether IB infringes. Existence of other brands may be relevant, but these documents are not relevant to existence of other brands. Searches on these brands would require extensive review after a term search—the mere question about differences in a product would trigger a hit.

3.  **Advertising and promotion of bareMinerals products (Req. Nos. 40, 55, 127 & 128)**

    **Defendant's Position:** Defendant requested a specimen of every type of advertising for products and services marketed under the bareMinerals mark (expressly including radio). In response, Plaintiff agreed to produce specimens of promotional items and "representative videotapes of its television marketing." Plaintiff did not disclose that it also used radio ads to promote its products containing "risk free" trial offers similar in structure to the "free trial" offer by Defendant. Defendant needs copies of the radio ads to show that Plaintiff's "risk free" trial offer is false and misleading.[6]

    Plaintiff has asserted that Intelligent Beauty's advertisements and correspondence with media outlets such as Daily Candy and beauty bloggers are improper. Plaintiff's witness Ms. Sarah Veit testified that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[6] Better Business Bureau complaints about Plaintiff's "risk free" trial offer are attached to the Bergman Decl., Ex. "D." A transcript of a bareMinerals radio ad for its "risk free" trial is attached as Ex. "E" to the Bergman Declaration. Defendant discovered the radio ad in an independent investigation.

16940.1

Magistrate Judge Joseph C. Spero
February 16, 2010
Page 4                                                                                                              Bryan Cave LLP

███████████████████████████████.[7] Plaintiff must produce its documents that refer or relate to media coverage including Daily Candy and other internet bloggers and media outlets to establish custom and practice in these marketing areas.

Ms. Sarah Veit also testified that ███████████████████████████████████████████████████.[8] Defendant needs the documents referring to purchase of keywords and to search engine optimization efforts to show the accepted industry practice on this subject.

### 4.  Documents about "the sale of 100% Natural Makeup" (Req. Nos. 2, 9, 10 & 13)

**Defendant's Position:**  Plaintiff's original complaint was premised in part on the allegation that Defendant's founder Christina Marcaccini falsely claimed to have created the "first all natural mineral makeup" knowing that bareMinerals was "well known as a pioneer in the development, marketing and sale of 100% natural mineral-based foundation makeup."  The Amended Complaint filed on November 18, 2009 omitted that allegation, however Plaintiff continues to allege that Defendant falsely advertises that its RAWMINERALS products are "Better than Bare."  Defendant contends that its products are "Better than Bare" because, unlike Bare Escentuals products, they are natural and preservative free.  Defendant is entitled to all documents which relate to development, marketing and sale of "100% natural makeup" by Plaintiff, including those documents that supported the allegation contained in Plaintiff's initial complaint.

**BE's Position**:  BE has produced nearly 12,000 pages of specimens of its marketing emails, catalogs, store displays, banner ads, product packaging, websites, etc. in response to IB's requests.  Oh Dec., ¶ 6.  The only remaining specimens at "issue" in this motion are radio advertisements.  As BE's counsel explained to IB's counsel, a third party produces BE's radio ads, and BE does not itself have copies of the ads.  When IB asked for copies of the radio advertisements at a deposition, BE immediately began investigating.  As counsel for BE explained to counsel for IB, the third party has agreed to provide BE with electronic copies of the radio ads, and BE will produce by February 19, 2010 any radio ads received from the third party, and transcripts of the ads available on the third party's website.  BE's counsel asked IB's counsel whether this resolved the issue, but did not hear back before providing BE's portion of this letter.

IB further mischaracterizes BE's production to improperly manufacture a dispute and to improperly expand the scope BE's duty.  IB suggests that BE did not produce specimens of its television marketing.  That is incorrect.  BE scheduled a time for Intelligent Beauty to inspect and watch those specimens.  Moreover, BE provided DVD and videotape copies of specific ones identified by IB.  Oh Dec., ¶ 7, Ex. D.  IB also suggests that BE did not produce advertisements with Daily Candy.  That is incorrect.  *E.g.*, Oh Dec., ¶ 8, Ex. E.  IB also suggests that BE did not produce documents concerning keywords searches. That is also incorrect; BE produced any such documents concerning Intelligent Beauty and RAWMINERALS months ago.  Oh Dec., ¶ 9.

IB also suggests that BE did not produce documents constituting media mentions.  That, too, is incorrect.  BE has produced more than four hundred such documents.  Oh Dec., ¶ 10.  Beyond this, IB has utterly failed to explain how any "documents that refer or relate to media coverage" or "purchase of keywords" and "search engine optimization" are relevant and searching for all such documents would be enormously burdensome.

---

[7] Veit Deposition, p. 128, l. 1 – 13, Bergman Decl., Ex. "F".  Examples of documents referring to Plaintiff's communications with Daily Candy and beauty bloggers is attached to the Bergman Declaration, Ex. "G."
[8] Veit Deposition, p. 124, l. 1 – 10, Bergman Decl., Ex. "F". A copy of the list of keywords purchased by Plaintiff, including RAWMINERALS, is attached to the Bergman Declaration, Ex. "H."

16940.1

**BE's Position**: IB again tries to side-step the negotiated courthouse agreement, which defined the scope of discovery related to whether BE used allegedly non-natural ingredients in its makeup. Oh Dec., ¶ 2, Ex. A, at IB No. 1. The Parties' agreement identified the search terms: butylene, cyclomethicone, propylene glycol, D&C, FD&C, talc* or *paraben*. Now that BE has produced such documents, IB seeks to disregard the negotiated terms in order to exact unmerited burden and expense from BE.

IB also concedes that the operative complaint contains no allegations, claims, or references concerning 100% natural makeup. Given the extent of IB's false advertising, BE chose to focus its case on the most egregious instances. IB's false comparative advertising at issue in this case concerns, in relevant part, claims that its product is "better than BareMinerals" or "better than Bare" in connection with highly specific comparative claims related to color, coverage, irritation, etc., none of which concerns 100% natural comparisons. "100% natural makeup" is irrelevant to any claim or defense in this case. Any additional searches are irrelevant and contrary to the parties' agreement.

**5. Documents regarding past, present or future plans to change the range of bareMinerals goods. (Req. Nos. 51, 71 - 74)**

**Defendant's Position:** Plaintiff's Vice President of product development, Ms. Sarina Godin, testified that [REDACTED] Defendant needs all documents showing discussion of and plans to discontinue the RareMinerals brand, to support its trademark infringement defense and show that the RareMinerals brand was unsuccessful as a result of other competitive and product development issues. In addition, Bare Escentuals changed the formulation of its Mineral Veil product to remove paraben in 2008 and rebranded that product with the bareMinerals trademark. The existence of parabens in Bare Escentuals and bareMinerals products is directly related to whether RAWMINERALS makeup is truthfully "Better than BareMinerals." The documents that refer or relate to the change in ingredients and the change in branding are directly relevant to this defense.

**BE's Position:** Pursuant to the courthouse agreement, BE agreed to produce documents related to past and present plans to expand or change the range of goods or services related to certain marks. BE has produced such plans, which IB acknowledges, and BE will continue to supplement its production with responsive documents that are located as part of its ongoing investigation and search. Regarding parabens/other allegedly non-natural ingredients, IB ignores the Parties' courthouse agreement, discussed above. The parties negotiated specific search terms, including "*paraben*", for specific categories of documents, which BE has searched for and produced.

Respectfully submitted,

| | |
|---|---|
| **BRYAN CAVE LLP** | **WINSTON & STRAWN LLP** |
| /s/ Keith D. Klein | /s/ Andrew Bridges |
| Keith D. Klein | Andrew Bridges |
| Attorneys for Defendant | Attorneys for Plaintiff |

---

[9] Godin Deposition, p. 200, l. 25 – p. 201, l. 7, Goldman Decl., Ex. "I."

16940.1