Marcy J. Bergman (CA Bar No. 75826)
Keith D. Klein (CA Bar No. 184846)
Stephanie A. Blazewicz (CA Bar No. 240359)
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone: (310) 576-2100
Facsimile: (310) 576-2200
E-mail marcy.bergman@bryancave.com
keith.kline@bryancave.com

Attorneys for Plaintiff Defendant
INTELLIGENT BEAUTY, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

BARE ESCENTUALS BEAUTY, INC., a Delaware corporation,

Plaintiff,

vs.

INTELLIGENT BEAUTY, LLC, INC., Delaware limited liability company,

Defendant.

AND COUNTERCLAIMS.

CASE NO.: 3:09-cv-00382-CRB (JCS)

**DECLARATION OF STEPHANIE A. BLAZEWICZ IN SUPPORT OF JOINT LETTER REGARDING PLAINTIFF'S DESIGNATION OF CORPORATE REPRESENTATIVE**

Trial Date: May 17, 2010
Time: 8:30 a.m.
Room: 8

I, Stephanie A. Blazewicz, declare under penalty of perjury that the following statements, made from my personal knowledge, are true and correct:

1. I am an attorney at law, duly licensed to practice law in the State of California. I am an associate with the law firm of Bryan Cave LLP, counsel of record for Defendant and Counterclaimant Intelligent Beauty LLC, Inc. ("Intelligent Beauty") in this action, and am authorized to make this declaration in that capacity. I make this declaration of my own personal knowledge.

2. Exhibit A is a true and correct copy of transcript excerpts from the January 27, 2010 deposition of Leslie Blodgett.

3. Exhibit B is a true and correct copy of a letter dated January 29, 2010 from Keith D. Klein to Andrew Bridges.

3. Exhibit C is a true and correct copy of a letter dated January 31, 2010 from Keith D. Klein to Andrew Bridges.

4. Exhibit D is a true and correct copy of a letter dated February 11, 2010 from Keith D. Klein to Andrew Bridges.

5. Exhibit E is a true and correct copy of transcript excerpts from the February 9, 2010 deposition of Michael Thompson.

This declaration was executed on February 18, 2010, at San Francisco, California.

_ /s/ Stephanie A. Blazewicz__________
Stephanie A. Blazewicz

# EXHIBIT A

# DOCUMENT FILED UNDER SEAL

# EXHIBIT B



Keith D. Klein
Direct: (310) 576-2159
keith.klein@bryancave.com

January 29, 2010

Bryan Cave LLP
2 Embarcadero Center
Suite 1410
San Francisco, CA 94111
Tel (415) 675-3400
Fax (415) 675-3434
www.bryancave.com

Chicago
Hamburg
Hong Kong
Irvine
Jefferson City
Kansas City
Kuwait
London
Los Angeles
Milan
New York
Phoenix
Shanghai
St. Louis
Washington, DC

Bryan Cave International Trade
*A TRADE CONSULTING SUBSIDIARY OF NON-LAWYER PROFESSIONALS*
www.bryancavetrade.com
Bangkok
Jakarta
Kuala Lumpur
Manila
Shanghai
Singapore
Tokyo

Bryan Cave Strategies
*A GOVERNMENT RELATIONS AND POLITICAL AFFAIRS SUBSIDIARY*
www.bryancavestrategies.com
Washington, DC
St. Louis

**VIA EMAIL AND MESSENGER**

Andrew Bridges, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**Re:** ***Bare Escentuals Beauty, Inc. v. Intelligent Beauty, LLC***
**Case No. CV-09-00382 (CRB)**

Dear Andrew:

We are writing to address serious concerns with respect to Bare Escentuals' designation of Leslie Blodgett as the Rule 30(b)(6) corporate representative for the following topic:

> "Complaints or inquiries from customers about the products sold and services marketed and/or sold under the marks BAREMINERALS and RAREMINERALS."

Bare Escentuals did not object to the Rule 30(b)(6) notice. Counsel for Intelligent Beauty prepared to take the deposition. Ms. Blodgett's utter failure to take even the most minimum steps to comply with the mandates of the Federal Rules of Civil Procedure constitutes a repudiation of the federal discovery rules, is an abuse of the discovery process, and has imposed significant costs on Intelligent Beauty. For the reasons set forth below, our client will be seeking sanctions for your client's abuse of the discovery process including the dismissal of your client's amended complaint in this matter.

At her deposition, Ms.Blodgett admitted that she was aware that Bare Escentuals could receive complaints through telephone calls and e-mails directly to the company, telephone calls to the customer call centers operated by Center Partners and Datapak on Bare Escentuals' behalf, and complaints to QVC, Ulta, Sephora and other retailers that sell its products. Yet, as more fully set forth below, with respect to every type of complaint and every manner in which complaints could be received, Ms. Blodgett did nothing to prepare as the corporate representative.

The law is clear and unambiguous: the person designated as a corporate representative "must testify about information known or reasonably available to the organization." See FRCP 30(b)(6). "A deponent under Rule 30(b)(6) has an affirmative obligation to educate himself as to the matters regarding the corporation. This includes all matters that are known or reasonably available to the corporation." *Honda Lease Trust v. Middlesex Mut. Assur. Co.*, 2008 U.S. Dist. LEXIS 60766, *8-9 (D. Conn. Aug. 7, 2008) (internal citations omitted). Further, the corporation "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters." *Sony Elecs., Inc. v. Soundview Techs., Inc.*, 217 F.R.D. 104, 112 (D. Conn. 2002) (internal citations omitted); *see also Beauperthuy v. 24 Hour Fitness United States, Inc.*, 2009 U.S. Dist. LEXIS 104906, *13 (N.D. Cal. Nov. 10, 2009) ("Because an individual so designated is speaking for the corporation, and not as an individual, this procedure imposes a significant duty upon the organization to educate the deponent prior to the deposition."); *see also United States ex rel. McLean v. County of Santa Clara*, 2008 U.S. Dist. LEXIS 41003, *5 (N.D. Cal. Apr. 30, 2008) ("[I]f the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation.").

"[I]nadequate preparation of a Rule 30(b)(6) designee can be sanctioned based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings." *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C. 1996); *see also Beauperthuy*, 2009 U.S. Dist. LEXIS 104906 at * 30-31. In the Ninth Circuit, "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle v. R.J. Reynolds Industries, Inc.*m 709 F.2d 585, 589 (9th Cir. 1983). Rule 37(d)(3) provides that sanctions for failing to appear for a Rule 30(b)(6) deposition may include dismissing the action or proceeding in whole or in part or rendering a default judgment against the disobedient party. "A terminating sanction, whether default judgment against a defendant or dismissal of plaintiff's action, is very severe." *Conn. Gen. Liffe Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). As a result, the violation giving rise to the sanction "must be due to 'willfulness, bad faith, or fault" of the party. *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Jorgensen*, 320 F.3d at 912.

Based on the sworn testimony of Leslie Blodgett, Bare Escentuals has sought to disrupt, impede and delay discovery and repudiated its obligations under Rule 30(b)(6). At the start of her deposition, Ms. Blodgett was asked how she generally prepared:



Andrew Bridges, Esq.
January 29, 2010
Page 3

**Bryan Cave LLP**

████████████████████████████████

███████████████████████

███████████

████████████████████████

█████████

████████████████████

Ms. Blodgett also testified that she did not prepare for her testimony as the corporate representative:

████████████████████████████████████████████████████████████

███████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████

████████████████████████████████████████████████

████████████████████████

█████████████████████████████████████

██████████████████

████████████████████████████████████████████████

██████████████████

██████████████████████████████████

Ms. Blodgett gave such testimony notwithstanding the fact that, of the limited complaints Defendant had an opportunity to review in four days, there are numerous complaints which support Defendant's affirmative defense of unclean hands. Attached hereto as Exhibits 1 through 9 is a sample of the complaints contained in the 80,000 page data dump, which spans the years 2005, 2006, 2007, 2008, and 2009.

Ms. Blodgett further testified that she did not prepare for her deposition by speaking with the appropriate individuals or reviewing any Better Business Bureau complaints or other relevant documents.



. . . .

This testimony is remarkable, particularly considering the documents that Intelligent Beauty subpoenaed from the Better Business Bureau also contain complaints which support its affirmative defense of unclean hands. *See* Ex. 10.

Ms. Blodgett further testified that she was not aware of any complaints published on Ripoffreport.com with respect to Bare Escentuals. (Rough Transcript, p. 26.) Ms. Blodgett testified in this regard even though there are posts on ripoffreport.com which support Defendant's affirmative defense and other documents produced demonstrate that Bare Escentuals previously received notice of such posts. *See* Exs. 11 and 12. Ms. Blodgett further testified that she did not make any inquiries about complaints with Bare Escentuals' customer service "call center" providers, Center Partners or Datapak.

Ms. Blodgett further testified that she did not inquire about complaints with Bare Escentauls' primary retailers Sephora, Ulta, Macy's, Nordstrom's, or QVC.

Ms. Blodgett further testified that she did not make any inquiries of the Bare Escentuals accounts receivable department in preparation for her testimony, despite the fact that she is named personally as a defendant in a class action securities lawsuit that specifically alleges:

> A former Bare Escentuals Assistant Controller who served in that capacity between May 2007 and October 2008 and oversaw all of the Company's revenue channels specifically recalled that **ongoing customer complaints about the automatic shipments was a recurring theme and she recalled a discussion about terminating the "club" sales practice.** A former Accounts Receivable Manager who reported to that former Assistant Controller during the February 2008 – August 2008 time period confirmed A/R received **multiple daily complaints from customers who received shipments they did not order.** *In Re Bare Escentuals, Inc., Securities Litigation*, U.S.D.C., Northern District of California, Case No. C-09-03268-PJH, ¶ 18 (emphasis added).

Ms. Blodgett testified:



Case3:09-cv-00382-CRB Document79-1 Filed02/18/10 Page12 of 44

Bryan Cave LLP

Andrew Bridges, Esq.
January 29, 2010
Page 7



Case3:09-cv-00382-CRB Document79-1 Filed02/18/10 Page13 of 44

Andrew Bridges, Esq.
January 29, 2010
Page 8

Bryan Cave LLP



Case3:09-cv-00382-CRB Document79-1 Filed02/18/10 Page14 of 44

Andrew Bridges, Esq.
January 29, 2010
Page 9

Bryan Cave LLP

Ms. Blodgett further testified that she did not ask Myles McCormick who she stated was the person most knowledgeable in the company about customer complaints. (Rough Transcript, pp. 105-106.)

C066231/0230261/770102.1

In fact, Ms. Blodgett was so unprepared that she could not even estimate how many customer complaints existed:

This is despite the fact that Ms. Blodgett claims that "[s]he receives thousands of letters and emails each week, and she personally responds to them all" and that "[i]t's a perfect example of how Leslie makes sure there's a human connection with everything she does, so she's not just a makeup authority, but a girlfriend." *See* http://bareescentuals.com/on/demandware.store/Sites-BareEscentuals-Site/default/Experience-Show?cgid=BE_MEET_LESLIE.

As demonstrated above, it is clear that Ms. Blodgett was not prepared to testify as the designated corporate representative. Now that Bare Escentuals has blatantly violated the letter and spirit of Rule 30(b)(6), Intelligent Beauty hereby (in addition to terminating sanctions) demands the following to address Bare Escentuals' conduct:

1. Service of a deposition subpoena and subpoena duces tecum on Center Partners seeking testimony and documents concerning customer complaints regarding Bare Escentuals' introductory or "Get Started Kits", its negative option continuity marketing program called the bareminerals Club and its value and pricing claims;

2. Service of a deposition subpoena and subpoena duces tecum on Datapak seeking testimony and documents concerning customer complaints regarding Bare Escentuals' introductory or "Get Started Kits", its negative option continuity marketing program called the bareminerals Club and its value and pricing claims;

3. Service of a deposition subpoena on QVC seeking testimony concerning customer complaints regarding Bare Escentuals' introductory or "Get Started Kits", its negative option continuity marketing program called the bareminerals Club and its value and pricing claims;

4. Service of a deposition subpoena on Sephora seeking testimony concerning customer complaints regarding Bare Escentuals' introductory or "Get Started Kits", its negative option continuity marketing program called the bareminerals Club and its value and pricing claims;

5. Service of a deposition subpoena on Ulta seeking testimony concerning customer complaints regarding Bare Escentuals' introductory or "Get Started Kits", its negative option continuity marketing program called the bareminerals Club and its value and pricing claims;

6. Service of a deposition subpoena on Nordstrom's seeking testimony concerning customer complaints regarding Bare Escentuals' introductory or "Get Started Kits", its negative option continuity marketing program called the bareminerals Club and its value and pricing claims;

7. The depositions of Bare Escentuals' customer service employees in the "Escalations Department" including Michael Thompson, Phuong Tran, Jeannie Smith, Quinta Gaines, and Sherry Mancini;

8. The deposition of Bare Escentuals' accounts receivable department employees, including Mr. Charles Bracher.

9. A comprehensive list of every former employee in the accounts receivable and escalations department for the last four years along with each former employee's most recent name, address and telephone number.

10. Extend the fact discovery period by three months;

11. Extend the expert disclosure deadlines by three months;

12. Extend the expert discovery deadlines by three months; and

13. Stipulation to continue the trial date by three months.

We will plan to meet and confer with you on this issue at our scheduled meeting on January 30th at 9am.

Sincerely,

Keith D. Klein

KK/sab

# EXHIBIT C



Keith D. Klein
Partner
Direct: (310) 576-2159
keith.klein@bryancave.com

Bryan Cave LLP
120 Broadway
Suite 300
Santa Monica, CA 90401-2386
Tel (310) 576-2100
Fax (310) 576-2200
www.bryancave.com

Chicago
Hamburg
Hong Kong
Irvine
Jefferson City
Kansas City
Kuwait
London
Los Angeles
Milan
New York
Phoenix
Shanghai
St. Louis
Washington, DC

Bryan Cave International Trade
A TRADE CONSULTING SUBSIDIARY OF NON-LAWYER PROFESSIONALS
www.bryancavetrade.com
Bangkok
Jakarta
Kuala Lumpur
Manila
Shanghai
Singapore
Tokyo

Bryan Cave Strategies
A GOVERNMENT RELATIONS AND POLITICAL AFFAIRS SUBSIDIARY
www.bryancavestrategies.com
Washington, DC
St. Louis

January 31, 2010

**VIA EMAIL**

Andrew Bridges, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

**Re: *Bare Escentuals Beauty, Inc. v. Intelligent Beauty, LLC***
**Case No. CV-09-00382(CRB)**

Dear Mr. Bridges:

We are writing in response to your Saturday, January 30, 2010, 4:41 pm e-mail pursuant to which your client is offering to substitute Michael Thompson as a new 30(b)(6) representative in lieu of your previous designation of Leslie Blodgett. We assume that your offer to make Mr. Thompson available is in response to our January 29, 2010 letter regarding your designation of Ms. Blodgett as the corporate representative.

The issue of Bare Escentuals' 30(b)(6) corporate representative, however, is one part of a larger and more serious discovery issue that must be resolved. Given Bare Escentuals' fundamental discovery abuses regarding any discovery related to Bare Escentuals' marketing strategy, the basis for its "value" and "discount" claims and its failure to produce all documents relating to customer complaints, we are not prepared to resolve the 30(b)(6) issue on a piecemeal basis nor are we prepared to waive our client' s right to pursue sanctions, including dismissal of your client's claims. A summary of your client's abuses, the issues presented and the commitments necessary for resolution are set forth below.

First, as you are aware, Intelligent Beauty has been demanding the production of documents relating to Bare Escentuals' introductory offers and continuity program through the informal document exchanges between the parties last August as well as formal written documents requests since last May. Bare

Escentuals has repeatedly refused to produce such documents, even while prosecuting claims that disclosures by Intelligent Beauty in connection with its introductory offer and continuity program were false and misleading. It was only on December 16, 2009, when you finally agreed to produce customer complaints related to the Bare Escentuals' products and services at issue in the case. However, even though you committed to produce such documents on December 16th, you failed to produce them until January 22, 2010—four days before the scheduled 30(b)(6) deposition relating to the issue of customer complaints. And, when you finally did produce the documents, you apparently chose to dump on us over 80,000 pages (BEB00081806-BEB161859), well aware that we would not have adequate time to review the materials in advance of the deposition. Such conduct is hardly reflective of a good faith effort to participate in a meaningful exchange of documents.

Second, you designated Ms. Blodgett, Bare Escentuals CEO for the past 14 years, as the corporate representative knowledgeable about customer complaints on January 22, 2010. The designation was made four days before her scheduled deposition and clearly at a time when you must have known she had no intent to prepare to testify on the subject matter. Your client, having been caught in its gamesmanship, now seeks our agreement that it can unilaterally replace Ms. Blodgett with Mr. Thompson. This cannot be accomplished without assurances that Mr. Thompson will be knowledgeable regarding the customer complaints and without Bare Escentuals having produced responsive documents relating to Mr. Thompson's proposed 30(b)(6) testimony.

The above-described discovery abuses are further complicated by what appears to be a broader pattern of fraud by Bare Escentuals relating to its deceptive marketing practices which extend over the past several years and continue through today. We have reviewed all of Bare Escentuals periodic filings with the United States Securities and Exchange Commission since its 2006 public offering as well as its SEC filings between February 26, 2009 and January 12, 2010. We note that nowhere in its SEC filings is there any disclosure that Bare Escentuals, as a key part of its marketing strategy, has made and is continuing to make retail "value" claims regarding the millions of Get Started Kits it has sold pursuant to infomercials and as part of its retail sales at Sephora, Ulta and its other retail outlets. These "value" claims violate Federal Trade Commission guidelines as well as state consumer laws. Further, there is no disclosure in Bare Escentuals' SEC filings that its negative option continuity program—the "bareMinerals Club"—likewise fraudulently promises that Club Members will receive a "20% discount off retail" for products that are, in fact, not sold at retail and are sold in dramatically smaller jar sizes than the size available at retail. My letters to you on January 29th set forth a few of the many customer complaints we have located with respect to Bare Escentuals' fraudulent and deceptive practices regarding its introductory kits and the bareMinerals Club. As you must know, similar complaints are the subject of e-mail and telephonic complaints to the Company, its outsourced customer call centers, its retail outlets, the Better Business Bureau, and on websites such as ripoffreport.com.

We have also reviewed the recent Tender Offer by Blush Acquisition Corporation, an indirect wholly owned subsidiary of Shiseido, and the January 14, Agreement and Plan of Merger. Section 4.8 of the Agreement and Plan of Merger falsely represents that, except as otherwise disclosed in the "Company Disclosure Schedule":

> "The Company and its Subsidiaries are, and since January 1, 2007 have been, in compliance with all laws, statutes, ordinances, codes, rules, regulations, decrees, injunctions, judgments and orders of Governmental Authorities, including the Sarbanes-Oxley Act (collectively, "Laws") applicable to the Company or any of its Subsidiaries, except for such non- compliance as would not reasonably be expected to have a Material Adverse Effect."

We have previously advised you that, based on our legal and factual review of the documents which have been produced by Bare Escentuals and the documents we have obtained independently, Bare Escentuals has engaged and is continuing to engage in a vast, systemic and pervasive, illegal marketing scheme in which Bare Escentuals makes false, misleading and deceptive "value" and "discount" claims as part of its sale of its introductory or "Get Started Kits" as well as false misleading and deceptive claims that Members in the bareMinerals Club will receive 20% off retail price. We are in the process of preparing and will deliver to you a comprehensive factual and legal analysis of Bare Escentuals' ongoing violations of State and Federal Law.

In light of the foregoing, we will require as part of resolution of the appropriate 30(b)(6) representative that Bare Escentuals certify that Mr. Thompson will be prepared to testify with respect to the subject matters set forth below. We also require that Bare Escentuals will further certify that its has produced all documents described below which will be relevant to the 30(b)(6) deposition:

1. **Sources of Complaints**: We expect Mr. Thompson to be able to identify all sources of complaints pertaining to Bare Escentuals products including, but not limited to: (1) telephone calls to Bare Escentuals internal customer service representatives as well as its external customer call centers operated by Datapak and Center Partners; (2) e-mails to Bare Escentuals and to its customer service representatives; (3) letters; (4) complaints to QVC; (5) complaints to Sephora, Ulta, Nordstrom and Macy's; and (6) complaints to Bare Escentuals owned stores.

2. **Records Maintained Recording Customer Complaints**: We expect Mr. Thompson to be able to identify all records, whether paper, electronic or tape recordings, that are maintained and available to the Company regarding complaints, including recordings of telephone calls, e-mails, letters, communications from channel distribution partners such as QVC, Sephora, Ulta, Macy's and Nordstrom and all compilations and summaries of complaints by type.

3. **Training and Scripts**: We expect Mr. Thompson to be able to testify regarding the training customer service representatives receive regarding how to handle the different types of

complaints as well as the scripts that are prepared to assist customer service representatives to handle different types of complaints. We expect that Bare Escentuals shall produce all such scripts related to responses to customer complaints about: (1) the price and "value" of the introductory offer for the Get Started Kits; (2) the size of the products contained in the Get Started Kits; (3) the purported 20% off retail price for members of the bareminerals continuity Club; (4) the size of the products sold in the bareminerals continuity Club; and (5) the terms, conditions and communications regarding the"Risk Free" Trial offer shall also be produced.

4. **Shiseido Documents**. All documents evidencing communications with Shiseido and their representatives regarding Bare Escentuals' compliance with Federal and State laws regarding the marketing and advertising claims of its introductory kits and the negative option continuity program sold as the bareMinerals Club, including the production of the "Company Disclosure Schedule" (redacted to the extent necessary for matters not related to compliance with laws relating to the Get Started Kits and the continuity program). We will expect Mr. Thompson to be ready to testify with respect to the contents and omitted content in such documents.

In addition, we note the following previously discussed specific documents requests for which we will require Bare Escentuals' certification that all responsive documents have been produced sufficiently in advance of the 30(b)(6) deposition:

5. **Document Request No. 38:** Intelligent Beauty requested documents which refer or relate to any analysis or evaluation of Bare Escentuals Beauty's marketing, advertising or promotions for bareMinerals and rareminerals. These, of necessity, include all of the documents relating to the claim that Club Members receive a discount of 20% off retail, the "value" claim for the Get Started Kits and the "Risk Free" Trial Offer in the radio advertising.

6. **Document Request No. 42:** Intelligent Beauty requested all documents referring or relating to the pricing of products sold under the bareMinerals, rareminerals or Mineral Veil marks. At the deposition of Leslie Blodgett, she testified that Bare Escentuals has a "team of experts" who have developed a "complex" formula to support its value and pricing claims with respect to the Get Started Kits and the bareMinerals Club continuity program Yet, no such documents have been produced. We note that Ms. Blodgett's testimony is inconsistent with the explanation of the customer service representatives who purportedly explained the various value claims in their correspondence with consumers.

7. **Document Request Nos. 40 through 44:** Intelligent Beauty requested specimens of every advertising and promotional item supporting the marketing or sales of products under the bareMinerals, rareminerals, mineral veil and the "minerals-suffix marks." While Bare Escentuals represented that it would comply with this request, Intelligent Beauty has now become aware that Bare Escentuals has been running radio promotions for bareMinerals, including "risk free" trial offers, since at least 2007. Yet, no such ads were produced or otherwise made available for inspection.

8. **Document Request No. 56 through 60:** Documents which refer or relate to complaints concerning the marketing, advertising, or promotional practices of Bare Escentuals, its affiliates or vendors including, without limitation, documents which relate to complaints to: (1) Bare Escentuals; (2) the Better Business Bureau; (3) the Electronic Retailing Self-Regulation Program; (4) the National Advertising Review Council; (5) Datapak; (6) Center Partners; (7) Sephora; (8) Ulta; (9) QVC; and (10) all government and regulating agencies.

9. **Document Request No. 136:** Documents referring or relating to customer complaints regarding the bareMinerals makeup Club continuity program. Bare Escentuals' failure to produce all responsive documents is designed to conceal a large number of consumer complaints about the false, misleading and deceptive marketing of the Club membership including, without limitation, complaints that the alleged 20% discount off retail for Club Members is a scam and a fraud.

This letter should be viewed in the context of our two letters on January 29, 2010.

We are prepared to meet and confer on the 30(b)(6) representative, but only in the context of a resolution of the overall issues discussed above.

Sincerely,

Keith D. Klein

KDK/dt2

cc: Marcy Bergman, Esq.
Stephanie Blazewicz, Esq.

# EXHIBIT D



Keith D. Klein
Direct: (310) 576-2159
keith.klein@bryancave.com

Bryan Cave LLP
120 Broadway
Suite 300
Santa Monica, CA 90401-2386
Tel (310) 576-2100
Fax (310) 576-2200
www.bryancave.com

Chicago
Hamburg
Hong Kong
Irvine
Jefferson City
Kansas City
Kuwait
London
Los Angeles
Milan
New York
Phoenix
Shanghai
St. Louis
Washington, DC

Bryan Cave International Trade
A TRADE CONSULTING SUBSIDIARY OF NON-LAWYER PROFESSIONALS
www.bryancavetrade.com
Bangkok
Jakarta
Kuala Lumpur
Manila
Shanghai
Singapore
Tokyo

Bryan Cave Strategies
A GOVERNMENT RELATIONS AND POLITICAL AFFAIRS SUBSIDIARY
www.bryancavestrategies.com
Washington, DC
St. Louis

February 11, 2010

**VIA EMAIL ONLY**

Andrew Bridges, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**Re: *Bare Escentuals Beauty, Inc. v. Intelligent Beauty, LLC***
**Case No. CV-09-00382 (CRB)**

Dear Mr. Bridges:

We are writing *again* to address serious concerns with respect to Bare Escentuals' designation of Michael Thompson as the substitute Rule 30(b)(6) corporate representative (following Leslie Blodgett) for the following topic:

> "Complaints or inquiries from customers about the products sold and services marketed and/or sold under the marks BAREMINERALS and RAREMINERALS."

Counsel for Intelligent Beauty has now twice prepared and appeared to take this deposition. In both instances, however, the designated witness has failed to take the minimum steps necessary to comply with the mandates of the Federal Rules of Civil Procedure or otherwise be sufficiently familiar with the subject to provide meaningful testimony.

Additionally, through the deposition of Mr. Thompson, it has become evident that Bare Escentuals has failed to produce documents responsive to Intelligent Beauty's discovery requests regarding complaints about products and services marketed and sold under the bareminerals mark. Such documents include:

- Complaints and correspondence with state attorneys general and other government agencies and responses thereto (located on Bare Escentuals' "J" drive);
- Better Business Bureau Complaints and responses thereto (located on Bare Escentuals' "J" drive);

- Sound files of the recorded calls referenced in the exhibits to the deposition of Thompson and Blodgett;
- The policies and procedures manual referenced in Mr. Thompson's deposition;
- Quarterly business review presentations prepared by or on behalf of Jeanie Smith and/or Michael Thompson; and
- The reason codes in Slingshot for cancellations.

Each of the foregoing should have been produced in response to the document requests which are the subject of the letter motion to compel that we forwarded to you yesterday. Demand is hereby made that Bare Escentuals immediately produce the foregoing documents.

**Bare Escentuals' Failure to Appear for Deposition Warrants Sanctions**

Bare Escentuals' continuing repudiation of the federal discovery rules is an abuse of the discovery process and has imposed significant costs on Intelligent Beauty. For the reasons set forth below, our client will now be seeking sanctions for your client's conduct.[1]

As you are aware, Bare Escentuals first designated Ms. Blodgett as the corporate representative in response to Intelligent Beauty's deposition notice. At her deposition, Ms. Blodgett admitted that she was aware that Bare Escentuals could receive complaints through telephone calls and e-mails directly to the company, telephone calls to the customer call centers operated by Center Partners and Datapak on Bare Escentuals' behalf, and complaints to QVC, Ulta, Sephora and other retailers that sell its products. Yet, as more fully described in my letter dated January 29, 2010, with respect to every type of complaint and every manner in which complaints could be received, Ms. Blodgett did nothing to prepare as the corporate representative.

Following the January 29, 2010 letter, Bare Escentuals acknowledged that Ms. Blodgett was not the proper witness on the designated subject and offered to "make Michael Thompson available as a substitute corporate representative of Bare Escentuals." In response, Intelligent Beauty agreed to take Mr. Thompson's deposition, expressly reserving all rights to seek sanctions against Bare Escentuals for

[1] In my January 29, 2010 letter, we set forth the applicable law regarding Rule 30(b)(6) depositions and the remedies available for a party's failure to appear. As a result, we will not repeat them here. However, we direct your attention to *Pioneer Drive, LLC v. Nissan Diesel Am., Inc.*, Case No. CV 08-115-M-DWM, 2009 U.S. Dist. LEXIS 117032, at *23 (D.Mont., Dec. 3, 2009) which recognized that "courts treat the failure of an organization to produce a prepared and educated witness under Rule 30(b)(6) as tantamount to a nonappearance at a deposition, meriting the imposition of sanctions." The facts presented in this case are far more compelling than those set forth in *Pioneer Drive* and, as a result, Intelligent Beauty will be seeking more extensive remedies.

its failure to produce a qualified witness. The parties agreed that Mr. Thompson's deposition would proceed on February 9, 2010, and Intelligent Beauty served another notice of deposition, which went without objection. Again, however, Mr. Thompson did virtually nothing to prepare as the corporate representative and, in fact, expressly testified that there were other individuals at Bare Escentuals who would be more qualified to testify about the subject matter—including Bare Escentuals' Jeanie Smith. Based on the sworn testimony of Ms. Blodgett and now Mr. Thompson, it is apparent that Bare Escentuals has sought to disrupt, impede and delay discovery and repudiated its obligations under Rule 30(b)(6). The relevant excerpts of Ms. Blodgett's testimony are set forth in my letter dated January 29, 2010. As set forth below, Mr. Thompson's testimony also reflects that he neither prepared for the deposition to be able to give knowledgeable answers on behalf of Bare Escentuals nor did he otherwise possess the necessary information without such preparation.

**Mr. Thompson Did Nothing to Prepare as the 30(b)(6) Witness**



Case3:09-cv-00382-CRB Document79-1 Filed02/18/10 Page27 of 44

Andrew Bridges, Esq.
February 11, 2010
Page 4

Bryan Cave LLP

C066231/0230261/771981.1

**Mr. Thompson Did Not Investigate the Company's Knowledge with Others**

Mr. Thompson further testified that he did not prepare for his deposition by speaking with the individuals who serve as liaisons for Bare Escentuals with respect to receiving complaints about Bare Escentuals products.



Case3:09-cv-00382-CRB Document79-1 Filed02/18/10 Page29 of 44

Andrew Bridges, Esq.
February 11, 2010
Page 6

Bryan Cave LLP



Case3:09-cv-00382-CRB Document79-1 Filed02/18/10 Page30 of 44

Andrew Bridges, Esq.
February 11, 2010
Page 7

Bryan Cave LLP



Case3:09-cv-00382-CRB Document79-1 Filed02/18/10 Page31 of 44

Bryan Cave LLP

Andrew Bridges, Esq.
February 11, 2010
Page 8



**Mr. Thompson Did Not Review Any Complaints**

As you will certainly recall, on January 22, 2010, Bare Escentuals produced 80,000 pages of complaints just four days prior to the initially scheduled deposition of the corporate representative. As it turns out, there are numerous complaints in the document production which support Intelligent Beauty's affirmative defense of unclean hands and its counterclaims of false advertising and unfair competition. I attached as Exhibits 1 through 9 to my letter dated January 29, 2010, a sample of such complaints contained in Bare Escentuals' 80,000 page document production, which spans the years 2005, 2006, 2007, 2008, and 2009.

Notwithstanding these facts, Mr. Thompson specifically testified that he had not reviewed any complaints from customers (including the complaints attached to my letter dated January 29, 2010), complaints from the Better Business Bureau or complaints from state attorneys general to prepare for the deposition.

None of the above-listed questions should have come as a surprise to Bare Escentuals or Mr. Thompson because Intelligent Beauty asked the identical questions to Ms. Blodgett. Indeed, it was Ms. Blodgett's similar failure to educate herself that served as a substantial basis for my prior meet and confer letter.

**Mr. Thompson Did Not Know Where Complaints Are Stored**

Intelligent Beauty also attempted to inquire about the location of complaints that Bare Escentuals may have received. However, Mr. Thompson was unprepared, as the second 30(b)(6) deponent on this subject, and testified that he would need to inquire with others about such information, which he had not done.[2]

[2] The only action Mr. Thompson testified that he took in advance of the deposition was making an inquiry with Jeanie Smith about the storage location for the correspondence with the Better Business Bureau and the state attorneys general. However, counsel for Bare Escentuals obstructed Intelligent Beauty's ability to examine Mr. Thompson on this subject by repeatedly instructing Mr. Thompson to not answer questions on the subject even though no privilege was implicated. *See* Thompson Transcript, 96:25-99:1, 96:25-100:9, 99:24-105:20 and 99:24-105:20. This conduct further compounds the sanctionable actions of Bare Escentuals.

Case3:09-cv-00382-CRB Document79-1 Filed02/18/10 Page34 of 44

Andrew Bridges, Esq.
February 11, 2010
Page 11

Bryan Cave LLP



Case3:09-cv-00382-CRB Document79-1 Filed02/18/10 Page35 of 44

Andrew Bridges, Esq.
February 11, 2010
Page 12

Bryan Cave LLP

**Mr. Thompson Did Not Know the Types of Complaints Received or How They Are Indexed**

Mr. Thompson also could not identify the types of complaints received or how they are indexed by Bare Escentuals.

C066231/0230261/771981.1

Case3:09-cv-00382-CRB Document79-1 Filed02/18/10 Page36 of 44

Andrew Bridges, Esq.
February 11, 2010
Page 13

Bryan Cave LLP



```

```

```

```<br><br>```

```

```

```



```

```<br><br>```

```<br><br>```

```

Case3:09-cv-00382-CRB Document79-1 Filed02/18/10 Page38 of 44

Andrew Bridges, Esq.
February 11, 2010
Page 15

Bryan Cave LLP



Case3:09-cv-00382-CRB Document79-1 Filed02/18/10 Page39 of 44

Bryan Cave LLP

Andrew Bridges, Esq.
February 11, 2010
Page 16

**Mr. Thompson Did Not Have Any Idea How Many Fraud Complaints Had Been Received**

In addition to lacking any meaningful knowledge with respect to any complaints received, Mr. Thompson could not say whether Bare Escentuals had received two or 10,000 complaints about Bare Escentuals' value claims and jar sizes.

C066231/0230261/771981.1



**Remedies Necessary to Avoid Prejudice to Intelligent Beauty**

It is clear that Mr. Thompson, like Ms. Blodgett, was not prepared to testify as the designated corporate representative and did not independently have the information required to testify about the extent of the knowledge of Bare Escentuals. As you know, the entire purpose of a Rule 30(b)(6) deposition is to eliminate the "run around" that Intelligent Beauty has received from Ms. Blodgett and Mr. Thompson.

Bare Escentuals has twice violated the letter and spirit of Rule 30(b)(6) and materially obstructed Intelligent Beauty's ability to depose a Bare Escentuals corporate representative on the one subject matter of customer complaints or inquiries. To redress this blatant refusal to produce a knowledgeable witness and Bare Escentuals' evident failure to produce responsive documents, Intelligent Beauty now must require the following discovery in addition to the items addressed at the beginning of the letter:

1. One or more new corporate representatives for Bare Escentuals. This time, both the designated witnesses and counsel must certify under penalty of perjury that the proposed witnesses have been educated on Bare Escentuals' knowledge of the specified subject matter and prepared to testify fully about all customer complaints and inquiries.[3]

---

[3] Intelligent Beauty previously requested such certification following Ms. Blodgett's deposition, but Bare Escentuals refused. We direct your attention to the *Pioneer Drive* case, where the Court ordered: "[t]o ensure this does not happen again, Defendant shall file a statement with this Court prior to the

2. Service of a deposition subpoena and subpoena duces tecum on Center Partners seeking testimony and documents concerning customer complaints regarding Bare Escentuals' introductory or "Get Started Kits," its negative option continuity marketing program called the bareminerals Club and its value and pricing claims;

3. Service of a deposition subpoena and subpoena duces tecum on Datapak seeking testimony and documents concerning customer complaints regarding Bare Escentuals' introductory or "Get Started Kits," its negative option continuity marketing program called the bareminerals Club and its value and pricing claims;

4. Service of a deposition subpoena on QVC seeking testimony concerning customer complaints regarding Bare Escentuals' introductory or "Get Started Kits," its negative option continuity marketing program called the bareminerals Club and its value and pricing claims;

5. Service of a deposition subpoena on Sephora seeking testimony concerning customer complaints regarding Bare Escentuals' introductory or "Get Started Kits," its negative option continuity marketing program called the bareminerals Club and its value and pricing claims;

6. Service of a deposition subpoena on Ulta seeking testimony concerning customer complaints regarding Bare Escentuals' introductory or "Get Started Kits," its negative option continuity marketing program called the bareminerals Club and its value and pricing claims;

7. Service of a deposition subpoena on Nordstrom's seeking testimony concerning customer complaints regarding Bare Escentuals' introductory or "Get Started Kits," its negative option continuity marketing program called the bareminerals Club and its value and pricing claims;

8. A complete production of all complaints received by Bare Escentuals (stored in any manner and on any server in its possession, custody or control—including the Slingshot system) regarding the "Get Started Kits," its negative option continuity marketing program called the

---

ordered deposition. The statement shall make clear who Defendant designates to represent it on each of the seven matters listed on Plaintiff's 30(b)(6) Notice. Failure to provide knowledgeable designees who can answer on behalf of Defendant shall be treated as contempt of court pursuant to *Fed. R. Civ. P. 37(b)*, and in such a circumstance Defendant's designee(s) and counsel may be jailed until the matters are testified to properly. Each designee shall sign the statement of designation, and in doing so provide that he or she is knowledgeable and fully able to testify to the matter(s) listed, and that he or she understands the punishment for failure to do so. Defendant's counsel shall also sign the statement of designation, and in doing so make clear that he or she fully understands what is expected of each designee, that he or she in good faith believes each designee has the requisite knowledge of the subject matter and is capable of testifying on behalf of Defendant, and that he or she understands the punishment for failure to do so."

bareminerals club and its value and pricing claims, all complaints with respect to weight, color, coverage, irritation and cakeyness.

9. The depositions of Bare Escentuals' customer service employees in the "Escalations Department" including Phuong Tran, Jeannie Smith, Quinta Gaines, and Sherry Mancini;

10. The deposition of Bare Escentuals' accounts receivable department employees, including Mr. Charles Bracher.

11. A comprehensive list of every former employee in the accounts receivable and escalations department for the last four years along with each former employee's most recent name, address and telephone number.

Though we have already met and conferred on the 30(b)(6) issue, we are willing to meet with you again to resolve this prior to filing a motion with the Court next week.

Sincerely,

Keith D. Klein

KK/sab

# EXHIBIT E

# DOCUMENT FILED UNDER SEAL